OPINION
{¶ 1} Robert Plato is appealing his convictions for abduction with a firearm specification and burglary.
 {¶ 2} This case stems from an incident in which Plato believed that Tom Latham owed him money from a business dealing between Latham and Plato's father. As a result, Plato conspired with two co-defendants to lure Latham and his niece to one of Latham's rental properties. Plato had one of his co-defendants contact Latham's niece and feign interest in purchasing one of Latham's properties in order to have Latham and his niece meet them at the property. Their original intention was to abduct Latham's niece and hold her for ransom from Latham. However, when Latham's niece was late, Plato and his cohorts abducted Latham from his property, handcuffed him, and threatened him with a gun until he paid the money. As Latham's niece approached the property, she saw a vehicle abruptly leaving the property with her uncle in the backseat apparently handcuffed. The niece immediately telephoned the co-defendant with whom she had arranged the appointment. When the individual would not explain the situation, Latham's niece threatened to contact the police. Shortly thereafter, Latham's niece received a telephone call from Latham on a cell phone in which he stated that he was fine and would meet her at the property in fifteen minutes.
 {¶ 3} Latham's niece then went to the police department to report her suspicion that her uncle had been abducted. The police subsequently drove to the area surrounding the property and found Latham walking down the street disoriented. Latham informed the police that Plato had taken him out into the country and had demanded $15,000.00 from him. Latham gave Plato $300 and told him that he could get the rest of the money to him the next day. With that agreement, Plato drove Latham back into town. Although Latham only suffered some minor physical harm to his wrists from being handcuffed, he suffered extreme psychological harm from the incident.
 {¶ 4} Upon further investigation, the police located Plato and his co-defendants who were staying at a cabin in a state park in Clark County, Ohio. Subsequently, Plato was indicted on one count of abduction with a firearm specification, one count of aggravated robbery with a firearm specification, one count of aggravated burglary with a firearm specification, and one count of conspiracy. Originally, a trial was scheduled for May 22-23, 2003. However, on May 9, 2003, defense counsel requested permission to withdraw from Plato's case. The court appointed new counsel and the trial was rescheduled for July 1-2, 2003. Plato and his counsel acknowledged the waiver of speedy trial time requirements and agreed to the new trial dates.
 {¶ 5} On June 25, 2003, Plato entered a guilty plea to the charge of abduction with a firearm specification and to a charge of burglary that had been reduced from aggravated burglary. Plato was subsequently sentenced to eight years of incarceration and was ordered to pay a $600.00 fine. Plato has since filed this appeal from his conviction.
 {¶ 6} Plato raises the following assignments of error:
 {¶ 7} "[1.] Appellant was deprived of his constitutional right to a trial by jury.
 {¶ 8} "[2.] Appellant was deprived of his rights, pursuant to the Sixth Amendment to the United States Constitution, and Article 1, Section 5 and 10, of the Ohio Constitution as well as effective assistance of counsel, when defense counsel failed to move for an evaluation of appellant's competency and sanity, and when the court failed to adequately guard appellant's Constitutional Rights.
 {¶ 9} "[3.] Appellant's firearm specification should be vacated, as no evidence was presented to show that the firearm was operative or could have readily been rendered operative."
 {¶ 10} Appellant's first assignment of error:
 {¶ 11} Plato argues that he was denied his right to a trial by jury because he did not execute a valid waiver of his right to a jury trial when he entered his guilty plea. We disagree.
 {¶ 12} Plato argues that he did not execute a valid waiver of his right to a jury trial as described in R.C. 2945.05. However, the Ohio Supreme Court long ago established that a defendant's guilty plea amounts to a waiver of his right to a jury trial.McAuley v. Maxwell (1963), 174 Ohio St. 567. Therefore, if Plato's guilty plea was properly entered then he has waived his right to a jury trial.
 {¶ 13} Ohio Rule of Criminal Procedure 11 sets forth the procedure for entering a guilty plea, providing:
 {¶ 14} "(C) Pleas of guilty and no contest in felony cases
 {¶ 15} "* * *
 {¶ 16} "(2) In felony cases the court * * * shall not accept a plea of guilty * * * without first addressing the defendant personally and doing all of the following:
 {¶ 17} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 {¶ 18} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * * and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 {¶ 19} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." The Ohio Supreme Court described how a trial court must explain a defendant's rights under Crim. R. 11 in State v.Ballard, stating:
 {¶ 20} "1. Prior to accepting a guilty plea from a criminal defendant, the trial court must inform the defendant that he is waiving his privilege against compulsory selfincrimination, his right to jury trial, his right to confront his accusers, and his right of compulsory process of witnesses. (Boykin v. Alabama,395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, followed.)
 {¶ 21} "2. Failure to use the exact language contained in Crim.R. 11(C), in informing a criminal defendant of his constitutional right to a trial and the constitutional rights related to such trial, including the right to trial by jury, is not grounds for vacating a plea as long as the record shows that the trial court explained these rights in a manner reasonably intelligible to that defendant (State v. Caudill,48 Ohio St.2d 342, 358 N.E.2d 601, modified.)" State v. Ballard (1981),66 Ohio St.2d 473, 473.
 {¶ 22} This Court has expounded on the Supreme Court's statement regarding Crim. R. 11 and the exchange that the trial court is required to have with a defendant prior to accepting his guilty plea, stating:
 {¶ 23} "The purpose of the procedure required by [Crim.] R. 11(C) is to ensure that the defendant subjectively understands each of the rights concerned and that he waives it by his plea of guilty or no contest. That proposition must be demonstrated by the record. The preferred method is to use the language contained in the rule, stopping after each right and asking whether the defendant understands that right and knows that his plea waives it. Id. When that is not done, the record must, in some other way, affirmatively demonstrate the propositions made necessary by the rule." State v. Thomas (1996), 116 Ohio App.3d 530, 534. At Plato's plea hearing, the following exchange occurred:
 {¶ 24} "The Court: If your plea of guilt is accepted, you're giving up certain constitutional rights; those include the right to a jury trial, the right to face those who accuse you and cross examine them, the right to remain silent, the right to make the state prove you guilty beyond a reasonable doubt before you can be found guilty, and the right to make witnesses attend and testify. Do you understand you give up those rights by entering a plea of guilt?
 {¶ 25} "Defendant: Yes, Your Honor.
 {¶ 26} "* * *
 {¶ 27} "The Court: There's a form that's used in this court when an individual enters a plea of guilt. Your lawyer's familiar with this form because of his practice. I've explained to you your rights that are printed on the form. We're going to pause while the bailiff hands the form to you and your lawyer. You'll have the chance to review the form. If you have any question at all about what's on those papers or what you're doing, you need to ask either your lawyer or me. If you don't have questions and if you want you plea of guilt accepted, you and your lawyer will each need to sign the form. Do you understand?
 {¶ 28} "Defendant: Yes, Your Honor." (Tr. 10, 18-19).
 {¶ 29} The form that Plato signed stated:
 {¶ 30} "I understand by pleading guilty I give up my right to a jury trial or court trial, where I could confront and have my attorney question witnesses against me, and where I could use the power of the Court to call witnesses to testify for me. I know at trial I would not have to take the witness stand and could not be forced to testify against myself and that no one could comment if I chose not to testify. I understand I waive my right to have the Prosecutor prove my guilt beyond a reasonable doubt on every element of each charge."
 {¶ 31} Moreover, Plato stated at the hearing that he was knowingly and voluntarily entering his plea of his own free choice. (Tr. 16-17).
 {¶ 32} Although the court did not stop after each right when it inquired of Plato whether he was giving up his rights, the court did address each of the rights listed in Criminal Rule 11 and asked Plato if he understood that by pleading guilty he would be giving up those rights. Plato indicated that he did understand and then he continued on to enter his plea. Moreover, Plato signed the form in which the Crim. R. 11 rights where reiterated and he acknowledged that he was giving up those rights, including his right to trial. Therefore, Plato voluntarily, knowingly, and intelligently entered into a plea agreement in which he knew he was waiving his right to a jury trial. Thus, Plato was not denied his constitutional right to a trial by jury. The first assignment of error is without merit and is overruled.
 {¶ 33} Appellant's second assignment of error:
 {¶ 34} Plato argues that he was denied effective assistance of counsel because his counsel failed to request the court determine his competency. We disagree.
 {¶ 35} We evaluate ineffective assistance of counsel arguments in light of the two prong analysis set forth inStrickland v. Washington (1984), 466 U.S. 668. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See id. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. See id. at 687. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. See id. at 689.
 {¶ 36} When one has pled guilty to a charge, he waives the right to claim he was denied effective assistance of counsel for anything other than that his counsel's ineffectiveness rendered his plea less than knowing and voluntary. State v. Barnett
(1991), 73 Ohio App.3d 244, 249.
 {¶ 37} The Ohio Supreme Court addressed the issue of whether a competency hearing was necessary in State v. Spivey, which involved a no contest plea. (1998), 81 Ohio St.3d 405, 409-10. A competency hearing will only be held after a plea has been entered if good cause is shown or upon the court's own motion.State v. Williams, 99 Ohio St.3d 439, 2003-Ohio-4164, ¶ 61. InSpivey, the Court said the "`right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains `sufficient indicia of incompetence', such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial.'" Spivey, supra at 410 quoting State v. Berry (1995), 72 Ohio St.3d 354, 359. An appellate court when reviewing the record for indicia of incompetence should give deference to the trial court and those who saw and heard the proceedings in the courtroom. Williams,
supra at ¶ 62. The essential issue is whether the defendant is capable of understanding the charges against him and assisting his counsel, which the defendant may be able to do even if he is emotionally disturbed. State v. Smith, 89 Ohio St.3d 323, 329,2000-Ohio-166.
 {¶ 38} In the instant case, the only indicia of incompetence that Plato points to is a reference by the prosecutor to "rehabilitation." However, upon review of the transcript, it appears that the prosecutor is referring to Plato's lengthy criminal history and efforts to rehabilitate his propensity for criminal behavior. Thus, this statement does not demonstrate an indicia of incompetence.
 {¶ 39} Additionally, Plato points to his presentence investigation report (hereinafter "PSI") as evidence of an indicia of incompetence. A review of the PSI demonstrates that Plato repeatedly made comments to the officer that were inconsistent with the truth or illogical. For example, Plato in the PSI states that he has several bank accounts with large sums of money and several cars. Yet, in the underlying crime, Plato was attempting to kidnap someone for ransom because he needed money and had to rent a vehicle to aid in the commission of the crime because one of his coconspirator's vehicle was broken. In his PSI, Plato appeared to be dishonest and repeatedly made grandiose statements regarding his importance, experience, education, and wealth. As an example, Plato stated that he spoke three languages fluently, including Spanish, but when asked a few simple questions in Spanish he could not respond appropriately.
 {¶ 40} In the PSI, one of the statements Plato made was that in the past he had received mental health treatment or been in a program. Plato did not elaborate on the treatment he received or for how long. However, Plato refused to sign a medical release so that the court could look at his medical history. Thus, Plato's statements could not be corroborated. Further, in light of his dishonestly during his interview, Plato's comments about his mental health lacked credibility.
 {¶ 41} Having reviewed the record, we cannot find evidence that Plato was incapable of understanding the charges against him and assisting his counsel. The record does not demonstrate an indicia of incompetence. Thus, we cannot find that Plato's counsel's conduct fell below an objective standard of reasonable representation because he did not request a competency hearing for Plato. Plato's second assignment of error is without merit and is overruled.
 {¶ 42} Appellant's third assignment of error:
 {¶ 43} Plato argues that the firearm specification on his conviction for abduction should be vacated because the State failed to present evidence that the firearm was operable. We disagree.
 {¶ 44} We have previously stated:
 {¶ 45} "A plea of guilty constitutes a complete admission of guilt. Crim. R. 11(B)(1). `By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime.'" State v. Barnett (1991), 73 Ohio App.3d 244,248.
 {¶ 46} At the plea hearing in the underlying case, the following exchange occurred:
 {¶ 47} "The Court: Are you admitting, then, as to Court 1, which is abduction, that you did commit that crime on or about the 27th day of February, the year 2003, in the county of Champaign, because you did, without privilege to do so, knowingly, by force or threat, remove another person from the place where the other person was found?
 {¶ 48} "Defendant: Yes, Your Honor.
 {¶ 49} "The Court: There's a specification for that charge. Are you admitting that you had a firearm on or about your person or under your control while committing the offense and you displayed the firearm, brandished the firearm, indicated that you possessed the firearm, or you used it to facilitate the offense?
 {¶ 50} "Defendant: Yes, Your Honor." (Tr. 17-18).
 {¶ 51} This record demonstrates that Plato admitted his guilt to the firearm specification in the abduction charge. Because Plato admitted his guilt in his plea, the State was relieved of its burden to prove any element of the charge beyond a reasonable doubt. Thus, the State was not required to prove that the firearm was operable. Therefore, we do not find that Plato's firearm specification should be vacated. Plato's third assignment of error is without merit and is overruled.
 {¶ 52} The judgment of the trial court is affirmed.
Brogan, J. and Grady, J., concur.