[Cite as *State v. Cutlip*, 2012-Ohio-5790.]

IN THE COURT OF APPEALS FOR CHAMPAIGN COUNTY, OHIO

STATE OF OHIO                                          :

     Plaintiff-Appellee                          :             C.A. CASE NO.    2012 CA 11

v.                                                             :             T.C. NO.    11CR280

LEWIS W. CUTLIP                                       :           (Criminal appeal from
                                                 Common Pleas Court)

     Defendant-Appellant                        :

                                                              :

                          . . . . . . . . . .

**O P I N I O N**

Rendered on the    7th    day of     December    , 2012.

. . . . . . . . . .

NICK A. SELVAGGIO, Atty. Reg. No.0055607, Prosecutor's Office, 200 N. Main Street, Urbana, Ohio 43078
       Attorney for Plaintiff-Appellee

WILLIAM O. CASS, JR., Atty. Reg. No. 0035417, 135 W. Dorothy Lane, Suite 209, Kettering, Ohio 45429
       Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    Defendant-appellant Lewis Wesley Cutlip appeals his conviction and sentence for one count of unlawful sexual conduct with a minor, in violation of R.C.

2907.04(A)(B)(1), a felony of the fourth degree.   Cutlip filed a timely notice of appeal with this Court on March 6, 2012.

{¶ 2}   On November 10, 2011, Cutlip was indicted for four counts of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A)(B)(1), all felonies of the fourth degree.   Cutlip was arraigned on November 16, 2011.

{¶ 3}   On December 16, 2011, Cutlip pled guilty to Count II, unlawful sexual conduct with a minor in return for dismissal of Counts I, III, and IV.   The trial court accepted his plea, and on February 6, 2012, Cutlip was sentenced to eighteen months in prison.   The trial court informed Cutlip that he would be subject to a mandatory five-year term of post-release control.   Cutlip was also designated as a Tier II sex offender.

{¶ 4}   It is from this judgment that Cutlip now appeals.

{¶ 5}   Cutlip's first assignment of error is as follows:

{¶ 6}   "THE TRIAL COURT FAILED TO ADVISE THE APPELLANT IN A REASONABLE MANNER THAT HIS PLEA WAIVED HIS CONSTITUTIONAL RIGHTS."

{¶ 7}   In his first assignment, Cutlip contends that the trial court failed to properly advise him regarding how his guilty plea would result in the waiver of his constitutional rights.   Specifically, Cutlip argues that the trial court failed to comply with the procedure set forth in Crim. R. 11(C)(2)(c) when it accepted his guilty plea.

{¶ 8}   "The trial court's acceptance of a guilty plea will be affirmed if the court engaged in a meaningful dialogue with the defendant which, in substance, explained the pertinent constitutional rights in a manner reasonably intelligible to that defendant." *State v.*

*Anderson*, 108 Ohio App.3d 5, 9, 669 N.E.2d 865 (9th Dist.1995). Crim. R. 11(C)(2)(c) provides "the court * * * shall not accept a plea of guilty * * * without first addressing the defendant personally * * *" and "[i]nforming the defendant and determining that the defendant understands that by the plea the defendant is waiving the [right] * * * to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself * * * ." The rule facilitates " a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review." *State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990).

{¶ 9}   "'Failure to use the exact language contained in Crim.R.11(C), in informing a criminal defendant of his constitutional right to a trial and the constitutional rights related to such trial, including the right to trial by jury, is not grounds for vacating a plea as long as the record shows that the trial court explained these rights in a manner reasonably intelligible to that defendant.'" *State v. Thomas*, 116 Ohio App.3d 530, 533,688 N.E.2d 602 (2d Dist.1996), quoting *State v. Ballard*, 66 Ohio St.2d 473, 423, N.E.2d 115 (1981), paragraph two of the syllabus. "The purpose of the procedure required by Civ. R. 11(C) is to ensure that the defendant subjectively understands each of the rights concerned and that he waives them by his plea of guilty * * * . That proposition must be demonstrated by the record. The preferred method is to use the language contained in the rule, stopping after each right and asking whether the defendant understands that right and knows that his plea waives it. Id. When that is not done, the record must, in some way, affirmatively demonstrate the propositions made necessary by the rule." *Id*.

{¶ 10}   At Cutlip's plea hearing, the following exchange occurred:

The Court: If your plea of guilt is accepted, you give up certain constitutional rights. Those include the right to a jury trial; the right to face those who accuse you and cross-examine them; the right to remain silent; the right to make the State prove you guilty beyond a reasonable doubt before you can be found guilty; and the right to make witnesses attend and testify. Do you understand you give up all those rights by entering a plea of guilt?

Cutlip: Yes, sir.

Q: Has anybody made threats against you to get you to plead guilty other than the threat of going to trial?

A: No, sir.

Q: Has anyone made promises to get you to plead guilty other than the promises you heard the prosecutor mention here today?

A: No, sir. (Tr. 7-8)

***

Q: There's a form that's used when a person enters a plea of guilt here. Your lawyer is familiar with this form because of his practice. I've tried to explain to you your rights that are printed

on the form. We are going to pause. The bailiff will hand the form to you and [your] lawyer. You'll have a chance to

read the form. If you have any questions at all about what's on these papers or what you're doing, you need to ask either your lawyer or me. If you don't have any questions and if you want your plea of guilt accepted, you and your lawyer each need to sign the form. Do you understand?

A: Yes, sir.

Q: *** Record should reflect that defendant and counsel reviewed the form and each has signed the form. Once again, do you believe you understand what you're doing here today, Mr. Cutlip.

A: Yes, sir.

Q: Are you doing this of your own free choice?

A: Yes, sir.

Q: Did you want the Court to accept your plea of guilt?

A: Yes, sir.

Q: Court accepts the plea of guilt. ***. (Tr. 12-13)

{¶ 11} The plea form that Cutlip signed stated in pertinent part:

{¶ 12} "I understand by pleading guilty I give up my right to a jury trial or court trial, where I could confront and have my attorney question witnesses against me, and where I could use the power of the Court to call witnesses to testify for me. I know at trial I would not have to take the witness stand and could not be forced to testify against myself and that no one could comment if I chose not to testify. I understand I waive my right to have the

Prosecutor prove my guilt beyond a reasonable doubt on every element of each charge."

{¶ 13} In *State v. Plato*, 2d Dist. Champaign No. 2003 CA 26, 2004-Ohio-5782 , this Court found that although the trial court did not stop after each right when it inquired of the defendant whether he was giving up his rights, the court specifically addressed each of the constitutional rights listed in Crim. R. 11. After reciting the rights listed in Crim. R. 11, the court asked the defendant if he understood that by pleading guilty, he would be giving up those rights. *Id*. The defendant indicated that he did understand the rights he was waiving, and he also signed a plea form almost identical to the form in the instant case wherein his constitutional rights were reiterated. *Id.* The defendant in *Plato* acknowledged in open court that he was giving up those rights and entered a plea of guilt, which the trial court accepted. *Id*. Upon review, we concluded that the defendant voluntarily, knowingly, and intelligently entered into a plea agreement in which he knew he was waiving his constitutional rights. *Id*.

{¶ 14} Similar to the facts in *Plato*, the trial court did not stop after each right when it inquired of Cutlip whether he was giving up his constitutional rights. However, the trial court specifically addressed each of the constitutional rights listed in Crim. R. 11, and asked Cutlip if he understood that by pleading guilty, he would be giving up those rights. Cutlip stated that he did understand the rights he was waiving, and he also signed a plea form wherein his constitutional rights were reiterated. We note that Cutlip stated at the hearing that he was entering his guilty plea of his own free will. Based on the facts before us, we conclude that the trial court sufficiently followed the procedure set forth in Crim. R. 11(C)(2)(c) when it informed Cutlip of the constitutional rights he would be waiving as a

result of pleading guilty.

{¶ 15}  Cutlip's first assignment of error is overruled.

{¶ 16}  Cutlip's second and final assignment of error is as follows:

{¶ 17}  "THE TRIAL COURT ERRED WHEN IT DID NOT ADEQUATELY INFORM THE APPELLANT OF THE CONSEQUENCES OF VIOLATING POST-RELEASE CONTROL."

{¶ 18}  In his final assignment, Cutlip argues that the trial court did not adequately inform him at sentencing of the consequences of violating post-release.  Specifically, he claims that he was not informed that the parole board could impose a prison term of up to one-half of his sentence if he violated the terms of his post-release control.  Additionally, he asserts that the trial court erred when, pursuant to R.C. 2929.19(B)(2)(f), it failed to advise him of the requirement that he not ingest a drug of abuse while serving his sentence  and that he was subject to random drug testing.

{¶ 19}  Regarding the requirements which R.C. 2929.19(B)(2)(f) impose upon a trial court, to require that the offender not ingest or be injected with a drug of abuse and submit to random drug testing while in prison, those requirements were not intended to benefit the defendant but rather to facilitate drug testing of prisoners in state institutions by discouraging defendants who are sentenced to prison from using drugs. *State v. Woods*, 2d Dist. Clark No. 05CA0063, 2006-Ohio-2325.   Because they create no substantive right, the trial court's failure to comply with the requirements of that section did not result in any prejudice to Cutlip, and constitutes harmless error. *Id*; see *State v. Arnold*, 2d Dist. Clark No. 02CA0002, 2002-Ohio-4977.

**{¶ 20}** R.C. 2929.19(B)(2)(e) requires the trial court to tell a defendant at sentencing that "if a period of supervision is imposed following the offender's release from prison, *** and if the offender violates that supervision or a condition of post-release control ***, the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed upon the offender. ***" *State v. Lux*, 2d Dist. Miami No. 2010 CA 30, 2012-Ohio-112.

**{¶ 21}** In the instant case, the trial court informed Cutlip at sentencing that he would be subject to mandatory post-release control for five years. It is undisputed, however, that the trial court failed to inform him of the possible penalty that could be imposed for a violation of post-release control. The State concedes, and we agree, that since Cutlip is presently incarcerated and will be until November of 2013, this matter should be remanded for the imposition of post-release control in accordance with R.C. 2929.191, wherein Cutlip should receive the notice mandated by R.C. 2929.19(B)(2)(e).

**{¶ 22}** Cutlip's second and final assignment of error is sustained as it relates to post-release control.

**{¶ 23}** Cutlip's second assignment having been sustained with respect to post-release control, this matter is remanded for proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and FROELICH, J., concur.

Copies mailed to:

Nick A. Selvaggio
William O. Cass, Jr.

Hon. Roger B. Wilson