[Cite as *State v. Finnell*, 2015-Ohio-4842.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | APPEAL NOS. C-140547 |
|  |  | C-140548 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-1305265-B |
|  |  | B-1306715 |
| vs. | : |  |
| KYLE FINNELL, | : |  |
|  |  | *O P I N I O N.* |
| Defendant-Appellant. | : |  |

Criminal Appeals From:  Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed in Part, Vacated in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  November 25, 2015

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Farrish Law Firm* and *Michaela M. Stagnaro*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**CUNNINGHAM, Judge.**

{¶1}   Defendant-appellant Kyle Finnell appeals from the judgments of the Hamilton County Court of Common Pleas convicting him, after a jury trial, of several offenses set forth in two indictments, and denying his motion for a new trial.

{¶2}   We affirm Finnell's convictions, but because the trial court imposed consecutive sentences and failed to incorporate its written findings in support of consecutive sentences into the sentencing entry, we remand the cause for that purpose.  Further, we vacate the order denying the motion for a new trial, because it was issued by the judge who presided over the trial, but who had recused himself from disposing of the motion.  We remand the cause for the presiding criminal judge to consider the motion, in accordance with the recusal entry.

## I.  Background Facts and Procedure

{¶3}   *Offenses under B-1305265-B*.  In June 2012, Finnell, a.k.a. Chico, and Dominic Hall, a.k.a. Flop, approached Money Murray at the home of Shawn Johnson, a.k.a. Troop, and threatened to harm her and her children if she did not help them rob her next-door neighbor Elgin Underwood, whom they believed had drugs and money inside his home.  Murray later sent Underwood a series of seductive text messages to obtain an invitation into Underwood's home, and eventually went to Underwood's house to carry out the plan.  Finnell and Hall entered the home after her, wearing masks and gloves and armed with guns.

{¶4}   In his bedroom, Underwood was pistol whipped and beaten while questioned about the location of the sought after drugs and money.  He was partially bound with duct tape, including on his face, before Finnell and Hall moved him into the living room.  There, Underwood was beaten again and bound some more.

{¶5}   Finnell and Hall ransacked the home and stole many of the home's contents.  Underwood heard one of the men announce that he was going to kill him,

2

but the other said no. The men and Murray exited from the home after about an hour and left Underwood completely bound.

{¶6} Underwood eventually freed himself and called the police. He identified his assailants as his female next-door neighbor and two black males, one fairly tall and one approximately five feet and six inches tall with a slim build.

{¶7} When the police interviewed Murray near the end of June, she told the police that she had been inside Underwood's house during the attack. But she claimed that did not know the intruders and they had stolen her cell phone. Over the next month, the police developed individuals known as "Troop," "Flop," and "Chico" as possible suspects. They also subpoened Murray's cellular phone records from her cellular carrier. The police realized that Murray was not being completely truthful with them, because her cell phone records demonstrated that she was still using the phone allegedly stolen from her.

{¶8} When the police interviewed Murray again at the end of July, she acknowledged that she had not been truthful, but claimed she could not say more because she feared for her life. The police obtained Murray's cell phone with a search a warrant and extracted the data from it, including her text messages and contact list. Her contact list included entries for the suspects.

{¶9} A review of Murray's cell phone records demonstrated that she had made several calls and sent several texts to Underwood's phone number before the attack, including texts indicating that they were intending to meet for sex. Further, her phone records demonstrated that she had exchanged several text messages with the number she associated with Finnell around the time of the attack, but the content of those texts had been erased by the time Murray turned her phone over to the police in July.

{¶10} After Murray's indictment in August 2012 for various offenses related to Underwood's attack, Murray started cooperating with the police in the

investigation of Finnell, Johnson, and Hall. Hall died while the investigation was in progress. In September 2013, Finnell and Johnson were co-indicted in the case numbered B-1305265 for the offenses related to the June 9, 2012 attack on Underwood. Finnell was charged with aggravated burglary with firearm specifications, burglary, aggravated robbery with firearm specifications, robbery, kidnapping, and having weapons while under a disability created by an adjudication of delinquency for aggravated robbery.

{¶11} *Offenses under B-1306715.* The police arrested Finnell for the June 2012 offenses on September 18, 2013, at the apartment of Raven English, and took him to the Hamilton County Justice Center. Later that day, Finnell made a phone call to English that was recorded. Finnell told her that he had "hid a ham in the white house" and that there was "shit behind the dresser."

{¶12} About a week later, while out on bail, Finnell sought out Murray at a barber shop and threatened her. Murray reported the conduct to the police and claimed that Finnell had showed her a handgun. Based upon her complaint, a warrant was issued for Finnell's arrest on the charge of intimidation of a witness.

{¶13} Officers returned to English's apartment in the morning on November 6, to re-arrest Finnell and to search for a firearm based on Finnell's comments during his call from jail to English. They knocked on the door until English answered and opened the door. Finnell, who appeared to have just awakened, stood about ten feet behind English in the doorway to a bedroom containing an unmade bed with a bullet sitting on top of the comforter. The police arrested Finnell in accordance with the warrant, and he was taken back to jail. He listed English on his intake form as his emergency contact, and listed the phone number she used as his own.

{¶14} Unknown to Finnell, a police officer searched the bedroom and found a .40-caliber Smith and Wesson and its slide, which had been removed, underneath a dresser in the room. The dresser was located less than three feet from where Finnell

4

had been standing when the officers entered the apartment. The police later learned that the firearm was operable and had been stolen during a burglary on July 14, 2013.

{¶15} The day after his arrest for the intimidation, Finnell called English from jail. In that recorded conversation, he told English that he had a "40" when discussing what items he could sell to make bail.

{¶16} Ultimately, Finnell was indicted in the case numbered B-1306715 for intimidation of a witness with firearm specifications, having a weapon under a disability caused by being under indictment, and receiving stolen property.

{¶17} *Trial and Finding of Guilty*. In June 2014, Finnell was tried before a jury on the offenses set forth in both indictments. The state presented several witnesses, including Underwood and Murray. Murray's testimony at times conflicted with Underwood's with respect to some of the details of the events that had occurred two years prior. For example, Murray contended that Underwood had planned to have a sexual encounter with her in his home that night, a claim that Underwood denied. But their testimony was generally consistent with respect to the details of the crimes and the intruders who committed them.

{¶18} Murray admitted to her role in setting up Underwood, but insisted that she only did so because Finnell and Hall had threatened to kill her if she did not. She further explained that she believed they were "dangerous" based on "stories" that "[she] ha[d] heard about their past." Defense counsel did not object to this testimony.

{¶19} Finnell stipulated at trial that he had been adjudicated delinquent in 2005 for committing the offense of aggravated robbery and that he had been under indictment for a felony crime of violence beginning in September 2013. These stipulations helped establish the elements of the weapons-under-a-disability offenses charged in the two indictments.

{¶20} The jury found Finnell guilty on all counts and specifications in the case numbered B-1305265-B, and guilty of all counts in the case numbered B-1306715, but not guilty of the firearm specifications attached to the intimidation count. Johnson, Finnell's codefendant at trial, was found not guilty of all the counts upon which he was indicted.

{¶21} *New-Trial Motion.* Before sentencing, Finnell, who had been released on bail during the trial, moved for a new trial alleging that two of the jurors believed he had followed them one day after a recess from deliberations in an attempt to intimidate them. According to the motion, the jurors did not inform the bailiff of their concern until after the verdict had been read and accepted in court by the trial judge—Judge Metz, and that once the jurors shared the information, Judge Metz was alerted to the situation and spoke to the two jurors about it.

{¶22} Judge Metz then recused himself from the case as to Finnell's motion for a new trial. By an entry docketed on July 18, 2014, the motion for a new trial was assigned to the presiding criminal judge of the court, Judge Marsh, but all other matters were to remain with Judge Metz. However, on July 30, before proceeding with sentencing, Judge Metz denied Finnell's motion for a new trial.

{¶23} *Sentencing.* The trial judge merged several of the counts in the case numbered B-1305265-B and sentenced Finnell to an 11-year-prison term for aggravated burglary in violation of R.C. 2911.11(A)(1), plus three additional years for the accompanying firearm specification, an 11-year-prison term for kidnapping in violation of R.C. 2905.01(A)(2), and a 36-month-prison term for having weapons under a disability in violation of R.C. 2923.13(A)(2), all to be served consecutively, for an aggregate term of 28 years.

{¶24} In the case numbered B-1306715, the trial court sentenced Finnell to a 36-month-prison term for intimidation of a witness in violation of R.C. 2921.04(B), a 36-month-prison-term for having weapons under a disability in violation of R.C.

2923.13(A)(2), and an 18-month-prison term for receiving stolen property in violation of R.C. 2913.51(A). Further, the court ordered the sentences for the weapons and receipt-of-stolen-property offenses to be served concurrently with each other, but consecutively to the intimidation sentence, for an aggregate term of six years. And the court ordered the sentences in B-1306715 to be served consecutively to the sentences in B-1305265, for a total aggregate term of 34 years.

## II. Analysis

{¶25} Finnell raises five assignments of error on appeal. He contends that (1) the trial court erred by admitting hearsay and other-acts evidence, (2) his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence, (3) the trial court erred by overruling his motion for a new trial, (4) he was denied the effective assistance of trial counsel, and (5) his sentences are contrary to law. We address each in turn.

### A. Admission of Hearsay and Other-Acts Evidence

{¶26} In his first assignment of error, Finnell contends that the trial court erred by admitting hearsay and other-acts evidence in violation of his right to a fair and impartial trial. Both of these issues involve Murray's testimony concerning how she became involved in the burglary and attack on Underwood. Finnell did not object to the admission of this testimony at trial. Therefore, we review only for plain error.

{¶27} We may reverse under a plain-error standard only where the defendant can demonstrate that "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

7

{¶28} *Hearsay Evidence.* Finnell first argues that impermissible hearsay evidence was admitted when Murray testified that "they" had threatened to kill her if she did not help with the robbery, and she failed to identify who made the statement.

{¶29} "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(A). Hearsay evidence is generally inadmissible to prove or disprove facts relevant to material issues in a case. *See* Evid.R. 802. A statement is not considered to be hearsay under certain circumstances, including where it is offered against a party and is the party's own statement. Evid.R. 801(D)(2)(a).

{¶30} Here, Murray's statement that "they" had threatened to kill her was not hearsay; she clarified during her testimony that "they" included Finnell, a party to the case. Because the statement fell into the definition of nonhearsay as set forth in Evid.R. 801(D)(2)(a), it was not inadmissible hearsay.

{¶31} Finnell also argues that Murray's statement that she had heard stories about Finnell's "dangerous past" was also inadmissible hearsay. An out-of-court statement that is not offered for its truth, but instead is offered for its effect on the listener, is not hearsay. *See* Evid.R. 801(C); *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). Murray's testimony about the stories was offered for this limited purpose. Finnell did not object nor request a limiting instruction.

{¶32} The admission of the statement without an instruction did not result in a manifest injustice in light of the other evidence in this case demonstrating Finnell's guilt. Moreover, the jury was informed of Finnell's prior involvement in an aggravated robbery by Finnell's own stipulation. Under these circumstances, Finnell has failed to demonstrate plain error.

{¶33} *Other-Acts Evidence.* Finnell contends that Murray's testimony that he was dangerous and that she had heard stories about his past was "other acts" evidence inadmissible under Evid.R. 404(B). This rule prohibits evidence of "other

crimes, wrongs, or acts * * * to prove the character of a person in order to show action in conformity therewith."

{¶34} Murray's testimony, however, did not serve as evidence of other crimes, wrongs, or acts; at best, it could be categorized as general character evidence. This type of evidence is usually not admissible to prove the conforming conduct of the accused. Evid.R. 404(A). But Murray's testimony was not offered for this purpose; it was offered to show why Murray cooperated with Finnell. Finnell did not object or request a limiting instruction, and he cannot demonstrate plain error. *See Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraphs two and three of the syllabus.

{¶35} Accordingly, we overrule the first assignment of error.

### B. Sufficiency and Manifest Weight of the Evidence

{¶36} In his second assignment of error, Finnell challenges the sufficiency and manifest weight of the evidence to support his convictions.

{¶37} He first argues that the state failed to prove beyond a reasonable doubt that he was the perpetrator of the aggravated burglary, kidnapping, and weapons-under-a-disability charges related to the June 2012 incident. He claims that there was no physical evidence linking him to the crimes such as DNA or fingerprint evidence, Underwood was unable to identify him, and Murray was not a credible witness where she admitted that she had lied to the police about her involvement, some of her testimony conflicted with Underwood's, and she was testifying against Finnell as part a plea bargain.

{¶38} But we are not persuaded. Murray's testimony was corroborated by her cell phone records, which demonstrated that she had contact with Underwood and Finnell at the times consistent with her testimony. And although Underwood was unable to identify Finnell as his assailant, because his assailant was wearing a mask, Underwood did testify that Finnell's body type was consistent with that of one of his assailants. Ultimately, this evidence was such that any reasonable trier of fact

9

could have found Finnell guilty beyond a reasonable doubt. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶39} We also reject Finnell's argument that his intimidation conviction was not based on sufficient evidence. Murray testified that Finnell had approached her at the barbershop on September 28, 2013, and threatened her in reference to his arrest based on the June 2012 offense. Finnell's presence at the barbershop on that date was confirmed by his own witness, an employee of the shop. We conclude, therefore, that the state presented more than sufficient evidence of this offense.

{¶40} Next Finnell argues that the evidence was insufficient to convict him of receiving stolen property and having a weapon under a disability. These offenses related to the stolen handgun—a .40-caliber Smith and Wesson—discovered at the time of Finnell's second arrest. He claims the state failed to produce evidence of his possession of the firearm, because the police found the firearm underneath a dresser in an apartment that did not belong to him.

{¶41} "Possession of stolen property for purposes of the receiving stolen property statute, R.C. 2913.51, may be constructive as well as actual." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus, *limited in part on other grounds*, *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus. The same is true with respect to the possession element of the having-weapons-under-a-disability statute, R.C. 2923.13. *See State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, 986 N.E.2d 27, ¶ 14 (1st Dist.), citing *State v. English*, 1st Dist. Hamilton No. C-080827, 2010-Ohio-1759, ¶ 31.

{¶42} "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Hankerson* at syllabus. In addition to dominion and control, the individual must be consciously aware of the presence of

the object. *Williams* at ¶ 15, quoting *State v. Thomas*, 1st Dist. Hamilton No. C-020282, 2003-Ohio-1185, ¶ 9. But this consciousness, as well as dominion and control, may be proved by circumstantial evidence. *Id.*

{¶43} Here, there was no evidence that Finnell had rented the apartment where the firearm was located, but there was evidence that it belonged to his close friend, English. Finnell was arrested in English's apartment two times, both early in the morning and under circumstances suggesting that he had spent the night there with her. And when the police entered the apartment to arrest Finnell in November 2013, Finnell was standing in the doorway of the bedroom where the firearm was recovered, and ammunition for the firearm was resting on the bed inside the room. Finnell and English were the only individuals in the apartment when the police arrived on that date.

{¶44} Further, Finnell's comments during telephone conversations with English when he was in jail can be interpreted as referring to the .40-caliber Smith and Wesson. Based on this evidence, reasonable minds could find that Finnell had knowingly exercised dominion and control over the firearm and, therefore, that he had constructively possessed it.

{¶45} In summary, after our review of the evidence, we conclude that Finnell's convictions were supported by sufficient evidence. And we find nothing in the record of the proceedings below to suggest that the jury, in resolving the conflicts in the evidence adduced on the charged offenses, lost its way or created such a manifest miscarriage of justice as to warrant the reversal of Finnell's convictions. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We note that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Accordingly, we overrule the second assignment of error.

## C. New Trial

{¶46} In his third assignment of error, Finnell argues that the trial court erred by overruling his motion for a new trial, He contends, in part, that the trial judge erred by ruling on the motion, because the judge had recused himself from the matter. We agree.

{¶47} The state argues that the court acted properly by ruling on the motion for a new trial, because the recusal was only as to a hearing on the motion and the court denied the motion without a hearing. But the record reflects that the trial judge had "disqualified himself" from the case "as to Defendant's motion for a new trial." As the matter had been assigned to the presiding criminal judge, the trial judge erred by ruling on the motion in contravention of the recusal order. Accordingly, we sustain the third assignment of error.

## D. Ineffective Assistance of Trial Counsel

{¶48} Finnell's fourth assignment of error contends that his trial counsel was ineffective, in violation of his constitutional rights, for failing to object during Murray's testimony to the hearsay and other-acts evidence and to obtain affidavits or subpoena the jurors for the hearing on his motion for a new trial.

{¶49} To establish a claim of ineffectiveness, Finnell must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's errors, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989).

{¶50} In our view, Finnell did not receive ineffective assistance of counsel. Murray's challenged testimony was admissible, and a request for a limiting instruction may have drawn unwanted attention to the testimony. And in light of the other evidence presented, there is no reasonable probability that the outcome of the

trial would have been different absent an instruction limiting the jury's use of this testimony.

{¶51} We conclude that Finnell's fourth assignment of error based on his claim that trial counsel failed to object to hearsay and other-acts evidence is without merit and we overrule it. Additionally, the other allegation of ineffectiveness of counsel is moot now that we are remanding for further proceedings on the motion for a new trial before the presiding criminal judge.

### E. Sentencing Issues

{¶52} In his final assignment of error, Finnell argues that his sentences are contrary to law for various reasons. Finnell argues that the court failed to consider the principles and purposes of sentencing and to make the findings required by R.C. 2929.14(C)(4) to support consecutive terms. He also contends that the court failed to provide several statutory notifications and that the court erroneously failed to merge several of his convictions.

{¶53} Under R.C. 2953.08(G)(2), we may modify or vacate Finnell's sentences only if we clearly and convincingly find that the record does not support the mandatory sentencing findings, if any, or that the sentence is otherwise contrary to law. *See State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.).

{¶54} *Consideration of the relevant sentencing factors*. The trial court must consider the purposes and principles of sentencing before imposing sentence, in accordance with the sentencing statutes, including R.C. 2929.11 and 2929.12. But we will presume that the court considered these statutes, even from a silent record, unless the appellant can demonstrate affirmatively that the court failed to do so. *See State v. Alexander*, 1st Dist. Hamilton Nos. C-110828 and C-110829, 2012-Ohio-3349, ¶ 24, *overruled sub silentio in part on other grounds*, *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, as noted in *State v. Simmons*, 1st Dist. Hamilton No. C-130126, 2014-Ohio-3695, ¶ 118.

13

{¶55} Here, it is clear that the trial court considered the relevant provisions of R.C. 2929.11 and 2929.12 in fashioning Finnell's sentence. The court shared its considerations of those provisions on the record. Thus, Finnell has failed to demonstrate error.

{¶56} *Imposition of consecutive terms.* We also conclude that the court's imposition of consecutive terms was not contrary to law. Before imposing consecutive terms, the trial court must make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry. *Bonnell* at syllabus. The trial court's failure to incorporate the statutory findings into the sentencing entry does not render the sentence contrary to law and may be corrected through a nunc pro tunc entry. *Id.* at ¶ 30.

{¶57} In this case, the trial court indicated at the hearing that all the sentences under B-1305265 were to served consecutively, for an aggregate term of 28 years in prison, and that some of the sentences under B-1306715 were to be served consecutively, for an aggregate term of six years, and that the sentences in the two cases were to be served consecutively, for a total aggregate term of 34 years.

{¶58} Additionally, the court selected the appropriate statutory criteria for imposing consecutive terms and informed Finnell of these R.C. 2929.14(C)(4) findings at the sentencing hearing. The court found that the imposition of consecutive terms was necessary to protect the public and to punish Finnell, and that consecutive terms were not disproportionate to the seriousness of Finnell's conduct and the danger he poses to the public. The court then found that the factors set forth in R.C. 2929.14(C)(4)(a) and (c) applied. The court entered these findings on the sentencing-findings worksheets. Thus, Finnell has not demonstrated that his sentence was contrary to law based on the trial court's failure to make the findings required by R.C. 2929.14(C)(4).

{¶59} The court failed, however, to incorporate the R.C. 2929.14(C)(4) findings into the sentencing entry. *See State v. Thomas*, 1st Dist. Hamilton No. C-140070, 2014-Ohio-3833, ¶ 9. This clerical mistake must be corrected on remand, in accordance with Crim.R. 36.

{¶60} *Notifications.* Next, Finnell argues that his sentences are contrary to law because the trial court failed to inform him, as required by R.C. 2929.19(B)(2)(f), that while in prison he cannot use a drug of abuse and will be required to submit to random drug testing. But we have held that "R.C. 2929.19(B)(2)(f) confers no substantive rights upon a defendant." *State v. Haywood*, 1st Dist. Hamilton No. C-130525, 2014-Ohio-2801, ¶ 18, citing *State v. Cutlip*, 2d Dist. Champaign No. 2012 CA 11, 2012-Ohio-5790, ¶ 19. Therefore, the trial court's failure to comply with the requirements of that section does not prejudice the defendant and constitutes harmless error. *See id.*

{¶61} Finnell also claims error based on the trial court's failure to notify him that he may or may not be eligible to earn days of credit while in prison, citing R.C. 2967.193. But that statute does not contain a provision requiring that the trial court provide such a notification. And although former R.C. 2929.14(D)(3) required such a notification in some circumstances, *see Haywood* at ¶ 17, that subdivision was no longer in effect at the time of Finnell's sentencing. Therefore, Finnell has not demonstrated any error.

{¶62} *Merger of Offenses.* Finally, Finnell contends that the trial court erred by failing to merge his convictions under R.C. 2941.25, Ohio's merger statute. According to Finnell, the offenses were allied offenses of similar import, committed neither separately nor with a separate animus, and therefore, his separate convictions must be merged into one. We review the trial court's merger ruling de novo. *See State v. Williams,* 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶63} Essentially, under R.C. 2941.25, the merger of allied offenses occurs when the same conduct of the defendant can be construed to constitute two or more allied offenses of a similar import, and this conduct shows that the offenses were not committed separately or with a separate animus.

{¶64} To determine whether allied offenses merge under R.C. 2941.25, courts must consider "three separate factors—the conduct, the animus, and the import." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the syllabus.

{¶65} Separate convictions are permitted under R.C. 2941.25 for allied offenses if we answer affirmatively to just one of the following three questions: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with a separate animus or motivation? *Id.* at paragraph three of the syllabus.

{¶66} Finnell argues that the aggravated burglary and kidnapping counts merge. In relevant part R.C. 2911.11(A)(1), aggravated burglary, provides that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure [robbery], if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another."

{¶67} And R.C. 2905.01(A)(2), kidnapping, in relevant part provides that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter." Because these offenses can be committed with the same conduct, we must determine whether they actually were committed with same conduct and whether the offenses must merge.

{¶68} Finnell argues that these offenses were committed with the same conduct, because the commission of the aggravated burglary entailed the restraint of

Underwood as contemplated by the kidnapping statute. Further, he contends that they were committed with the same animus, because there was "no substantial movement" to demonstrate a significance independent from the aggravated burglary.

{¶69} This argument, however, is contrary to Finnell's concession in the trial court at sentencing that a separate animus existed for the offenses. Therefore, he has waived this issue. Because of this separate animus, the convictions do not merge.

{¶70} Next, Finnell maintains that the receiving-stolen-property conviction and having-weapons-under-a-disability conviction should merge. R.C. 2913.51(A), receiving stolen property, prohibits a person from "receiv[ing], retain[ing], or dispos[ing] of the property of another—here a firearm—knowing or having reasonable cause to believe that the property has been obtained through the commission of a theft offense." R.C. 2923.13(A)(2), having weapons under a disability, prohibits a person who is under indictment or has been convicted of any felony offense of violence from knowingly acquiring, having, carrying, or using any firearm or dangerous ordnance.

{¶71} Finnell contends that it is not only possible to commit the two offenses with the same conduct, but that the evidence shows that they were committed with the same conduct. That conduct was his possession of the stolen .40-caliber Smith and Wesson on November 6, 2013, when he was arrested for the intimidation offense while under indictment for the June 2012 offenses.

{¶72} Merger is not proper, however, because the offenses were not of a similar import. As explained in *Ruff,* offenses are of dissimilar import "when the defendant's conduct constitutes offenses involving separate victims or *if the harm that results from each offense is separate and identifiable.*" (Emphasis added.) *Id.* at paragraph two of the syllabus. The import of the two offenses is evinced by such factors as the harm inflicted and the punishment the legislature associated with the offenses. *See State v. Earley*, Slip Opinion No. 2015-Ohio-4615, ¶ 15 (Nov. 10, 2015);

17

*State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 25-26 (Lanzinger, J., concurring.)

{¶73} The criminal wrong committed by Finnell's possession of a firearm while under a disability, in violation of R.C. 2923.13(A)(2), is different from the criminal wrong resulting from his violation of R.C. 2913.51(A), which involves Finnell's retention of the " 'fruits' " of a theft offense. *See Maumee v. Geiger*, 45 Ohio St.2d 238, 241, 344 N.E.2d 133 (1976), quoting *Smith v. State*, 59 Ohio St. 350, 361, 52 N.E. 826 (1898).

{¶74} The harm that resulted from the weapons offense was an increased risk that the weapon would be used by Finnell, who had was under an indictment at the time for a felony crime of violence. *See State v. Rice,* 69 Ohio St.2d 422, 427, 433 N.E.2d 175 (1982). The significance of the weapons offense is noticeable in the statute. The legislature chose to punish as a third-degree felony this mere act of possessing a weapon when under a disability, separate from any offense committed with the firearm. *See State v. Bates,* 1st Dist. Hamilton No. C-140033, 2015-Ohio-116, ¶ 30 (declining to merge convictions for aggravated robbery, improper handling of a firearm, carrying a concealed weapon, and having weapons under a disability).

{¶75} Conversely, the harm that resulted from the receipt of the stolen-property offense involved the legal owner's loss of the firearm. This was independent from the harm resulting from Finnell's violation of the weapons offense. We conclude, therefore, that the offenses have a different import and were properly punished separately, notwithstanding that both offenses arose from Finnell's possession of the same firearm.

{¶76} In summary, we conclude that Finnell's sentences were not contrary to law, and overrule the fifth assignment of error.

18

### III. Conclusion

{¶77}   We affirm Finnell's convictions, but we remand the cause for the trial court to incorporate its statutory consecutive-sentencing findings into the sentencing entries.  *See Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 30. Further, we vacate the trial court's order denying the motion for a new trial, and we remand the cause for further proceedings on that motion, consistent with the law and this opinion.

Judgments affirmed in part, vacated in part, and cause remanded.

**HENDON, P.J.,** and **MOCK, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.